UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE OLIVER, et al., | ) | CASE NO. 5:18-cv-967 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| ARS OHIO LLC, et al., | ) | |
| DEFENDANTS. | ) | |

Before the Court are two motions: the motion of defendant Westlake Services, LLC ("Westlake") for partial dismissal (Doc. No. 6 ["Westlake Mot."]), and the motion of defendant ARS Ohio LLC ("ARS") for partial judgment on the pleadings (Doc. No. 15 ["ARS Mot."]). The motions are opposed and fully briefed. (Doc. No. 13 ["Westlake Opp'n"]; Doc. No. 14 ["Westlake Reply"]; Doc. No. 17 ["ARS Opp'n"]; Doc. No. 19 ["ARS Reply"].) For the reasons discussed herein, the motions are granted in part and denied in part.

I. BACKGROUND

All facts are taken from the allegations in the complaint, and, for the consideration of the present motions, are presumed to be true. Plaintiffs, George and Maria Oliver, are the owners of a 2008 dark blue Ford Edge. (Doc. No. 1-2 (Complaint ["Compl."]) ¶ 16.) Plaintiffs financed the vehicle through Friends and Family Credit Union. (*Id.*) At all times pertinent to this litigation, plaintiffs were current with and not in default of their automobile loan. (*Id.* ¶ 32.)

Westlake is a California limited liability company, doing business in Ohio, and "is in the business of providing automobile financing." (*Id.* ¶¶ 6, 12.) ARS is an Ohio limited liability

company that is "in the automotive involuntary repossession business." (*Id.* ¶¶ 5, 13.) It is undisputed that plaintiffs "never had a contract with Westlake," and "have never had any association or business relationship with either Westlake or ARS." (*Id.* ¶¶ 32, 33.)

On March 30, 2017, Maria Oliver drove her Ford Edge to her place of employment in Canton, Ohio and parked the vehicle in the parking lot. When she left work that evening, she noticed that the vehicle was missing from the lot. Concerned, she immediately called the local police department to report that her vehicle had been stolen. (*Id.* ¶ 17.) The police dispatcher advised her that an investigation would be conducted. Twenty minutes later, a responding police officer contacted Maria and advised her that the vehicle had been involuntarily repossessed by ARS because the vehicle's previous owner, Willy Perry, was delinquent on payments.[1] (*Id.* ¶¶ 18, 19.)

Over the next several days, George Oliver attempted to contact ARS but was unable to speak with anyone about the repossession of the Ford Edge. (*Id.* ¶¶ 24, 25.) On April 3, 2017, George Oliver visited the local police station and spoke with an officer who had spoken with an ARS representative. The officer conveyed to Mr. Oliver that Westlake had directed ARS to repossess the vehicle. (*Id.* ¶ 26; *see id.* ¶ 13.) Inasmuch as the vehicle had been improperly repossessed, the officer instructed the ARS representative to make arrangements for plaintiffs to recover their vehicle at a Ford dealership. (*Id.* ¶¶ 22, 26.) Upon retrieving the vehicle, plaintiffs

---

[1] According to the complaint, plaintiffs "never had a contract with Westlake, let alone had a financing agreement related to their vehicle go into default. Nonetheless, Westlake falsely labeled [p]laintiffs as being in a contractual default, thus triggering the wrongful repossession of [p]laintiffs' vehicle." (*Id.* ¶ 33.)

discovered that it had been damaged by ARS when it had been towed away from Maria Oliver's employer's lot. (*Id*. ¶¶ 28-30.) As a result of improper towing, the vehicle sustained "damage to the transmission, significant front-end damage, and other significant" damages. (*Id*. ¶ 31.)

On March 27, 2018, plaintiffs brought suit in the Stark County Court of Common Pleas against Westlake and ARS. Plaintiffs' complaint raises the following causes of action against defendants: violation of the Ohio Consumer Sales Practices Act ("OCSPA"); wrongful repossession; conversion; negligence; trespass to chattels; violation of the Fair Debt Collection Practices Act ("FDCPA"); bailment; and civil theft. On April 27, 2018, the defendants removed the action to federal court on the basis of federal question jurisdiction. (Doc. No. 1 (Notice of Removal) ¶ 3.)

## II. STANDARD OF REVIEW

Westlake brings its motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and ARS relies on Rule 12(c). The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a motion to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff*, 133 F.3d at 421 (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the

Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc*., 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]"); *see also Williams v. CitiMortgage, Inc*., 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]").

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

In their dispositive motions, defendants each seek dismissal of plaintiffs' first (OCSPA), sixth (FDCPA), and eighth (civil theft) causes of action.

A.      **FDCPA Claim**

Because plaintiffs' claim under the FDCPA, 15 U.S.C. § 1692 *et seq.*, provides this Court with jurisdiction, the Court begins with defendants' arguments relative to this federal statute. Specifically, ARS argues that plaintiffs cannot make out a claim under the FDCPA because they do not meet the statutory definition of "consumer." (ARS Mot. at 156.[2]) Westlake insists that dismissal of plaintiffs' federal claim is warranted because it is not a "debt collector" as defined by the FDCPA. (Westlake Mot. at 76-77.) The Court takes each argument in turn.

The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Because the complaint specifically provides that plaintiffs never had any association or business relationship with either defendant, ARS argues that plaintiffs cannot establish that they were ever obligated or allegedly obligated to pay any debt to defendants. (ARS Mot. at 156-57.) While plaintiffs allege that they are "consumers" under the FDCPA (*see* Compl. ¶ 8), ARS maintains that plaintiffs fail to support this legal conclusion with factual allegations that would demonstrate that, as between themselves and defendants, they are "consumers."

Such a conclusion, however, is not necessarily fatal to plaintiffs' FDCPA claim. It is true that relief under certain provisions of the FDCPA is only available to "consumers." For example, in *Montgomery v. Huntington Bank*, 346 F.3d 693, 696 (6th Cir. 2003), the plaintiff brought suit under three sections of the FDCPA—§§ 1692c, 1692d, and 1692e. As to those three sections, the court found that "relief is limited to 'consumers' . . . under § 1692c." In reaching this conclusion, the Court observed that "§ 1692c 'appears to be the most restrictive of the FDCPA's

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

provisions.'" *Id*. (quoting *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 n.1 (6th Cir. 1994)). It reached a different conclusion as to the other sections. Noting that § 1692d explicitly provided for relief for *any person* harassed or oppressed in the collection of a debt, and further noting that § 1692e protected against any false or misleading methods of debt collection and that § 1692k(a) permits enforcement of that section by *any person* who is harmed by a debt collector, the court concluded that these provisions collectively demonstrate that any aggrieved party may bring suit under §§ 1692d and 1692e.[3] *Id*. at 697.

Relying on similar logic, including the inclusiveness of § 1692k(a), "many courts from other circuits have held that standing under section 1692f is not limited to 'consumers' and instead extends to anyone aggrieved by a debt collector's unfair or unconscionable collection practices." *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 228 (D. Conn. 2014) (quotation marks omitted, collecting cases). In *Aviles*, one of the plaintiffs was the niece of the debtor, who was present when a repossession agency used allegedly unconscionable tactics to repossess the debtor's vehicle. The court found that the niece had standing as an aggrieved person to assert a claim under § 1692f, noting that such a conclusion "serves the aim of eliminating unfair or unconscionable collection practices which may injure third parties." *Id*. A similar result is warranted here. A finding that plaintiffs have standing to bring a claim under § 1692f is consistent with both the language of the FDCPA and the stated goal of protecting third

---

[3] Section 1692k(a) provides, in part, that "except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subsection with respect to *any person* is liable to such person[.]" 15 U.S.C. § 1692k(a) (emphasis added).

6

parties from unconscionable debt collection practices.[4]

Nevertheless, Westlake argues that, because it is not a "debt collector" under the FDCPA—and was not engaged in debt collection practices—the FDCPA claim must still fail. The FDCPA defines a "debtor collector" as "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Neither Westlake nor ARS are debt collectors because Westlake was attempting to collect on its own debt. *See Montgomery*, 346 F.3d at 699 (noting that "Huntington Bank was an actual, original, consumer creditor of Montgomery's mother collecting its account, and, as such, was exempted from the statutory definition of a 'debt collector'"). Section 1692a(6)(F)(ii) contains an exception for creditors attempting to collect on debts owed to them. *Id*. Likewise, those who are enlisted to assist in the enforcement of such a security interest—such as repossession agencies like ARS—are also generally excluded from the reaches of the FDCPA. *See, e.g., id*. ("As a repossession agency, Silver Shadow, likewise, does not fall within the definition of a 'debt collector.'"); *see Jordan v. Kent Recovery Servs. Inc.*, 731 F. Supp. 652, 659-60 (D. Del. 1990) (finding that the repossessing of a car is not the action of a debt collector and falls outside the protection of the FDCPA).

---

[4] In its reply brief, ARS argues for the first time that the FDCPA claim should be dismissed against it because plaintiffs allege that ARS was acting under instructions from Westlake. (ARS Reply at 178-80.) "The Sixth Circuit's longstanding rule is that issues raised for the first time in a reply brief are considered waived." *Dykes v. Marshall*, No. 1:14-CV-1167, 2016 WL 1059618, at *3 (W.D. Mich. Mar. 17, 2016) (citing *Tranter v. Orick*, 460 F. App'x 513, 515 (6th Cir. 2012); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). The Court will not consider this argument at this time but will permit ARS to revisit this issue on summary judgment, at which time plaintiffs will have the opportunity to respond.

There is an exception to the general rule that repossession actions do not qualify for protection under the FDCPA. Section 1692f(6) prohibits the following:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6). Pertinent to the present motions, § 1692f(6) provides for FDCPA protection when the alleged repossession action is taken when there is no present right to possession of the property. *See also Montgomery*, 346 F.3d at 700-01 ("except for purposes of § 1692f(6), an enforcer of a security interest, such as a repossession agency, does not meet the statutory definition of a debt collector under the FDCPA"); *Jordan*, 731 F. Supp. at 659 (similar).

Here, plaintiffs have alleged that they financed their vehicle through a third-party and that they were current in their payments under their financing agreement. (Compl. ¶¶ 16, 32.) They have further alleged that they never entered into a financing agreement with Westlake; that Westlake "falsely labeled [p]laintiffs as being in contractual default, thus triggering the wrongful repossession[;]" that plaintiffs have never had *any* business relationship or association with defendants; and that, therefore, defendants did not "possess[] the legal right or authority to repossess" the vehicle. (*Id*. ¶¶ 22, 32, 33.) The Court finds that these allegations adequately state a claim for relief under § 1692f(6) because, taken together, they allege that defendants had no present right to repossess the vehicle. *See, e.g., Vantu v. Echo Recovery, LLC*, 85 F. Supp. 3d 939, 944 (N.D. Ohio 2015) (noting that it was alleged that the security enforcer "had no right to present possession of the collateral" because he breached the peace and finding that "its conduct

(if true) violated the FDCPA"). While these allegations may not find support in discovery, and defendants may also be entitled to affirmative defenses that ultimately defeat this claim, they are sufficient at this stage in the proceedings.[5] Accordingly, defendants' motions, to the extent they seek dismissal of plaintiffs' FDCPA claim, are DENIED.

### B. OCSPA Claim

The OCSPA "provides a private cause of action, permitting consumers to seek relief against suppliers who have violated the act." *Rose-Gulley v. Spitzer Akron, Inc*., No. 21778, 2004 WL 1736982, at *3 (Ohio Ct. App. Aug. 4, 2004) (citing Ohio Rev. Code § 1345.09). The act defines a "consumer" as "a person who engages in a consumer transaction with a supplier." Ohio Rev. Code § 1345.01(D). A "supplier" refers to "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." § 1345.01(C). A "consumer transaction" means "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." § 1345.01(A). Defendants maintain that plaintiffs' OCSPA claim fails because none of these definitions applies to the parties here.

The complaint is clear that plaintiffs did not engage in a commercial transaction with defendants. "Ohio courts have . . . explicitly required that the consumer transaction occur

---

[5] Plaintiffs also argue that they have set forth a claim under § 1692f(6) because they have alleged that defendants "breached the peace" when they repossessed the Ford Edge. (Compl. ¶ 70.) Under Ohio law, "a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace." *Vantu*, 85 F. Supp. 3d at 943 (citing Ohio Rev. Code § 1309.609(B)(2)). The complaint does not set forth any factual allegations to support the legal conclusion that defendants breached the peace, and plaintiffs affirmatively assert that the vehicle was taken from a parking lot without their knowledge. (*See* Compl. ¶ 17.) *See, e.g., Leighty v. Am. Can Credit Union*, No. 44496, 1982 WL 2574, at *5 (Ohio Ct. App. Dec. 9, 1982) (Plaintiff failed to sufficiently plead that the repossession of his vehicle amounted to a breach of the peace, under Ohio Rev. Code § 1309.609(B)(2), because the allegations demonstrated that he and his wife were "unaware that the car ha[d] been removed from their driveway[.]")

between the supplier and the consumer." *Riley v. Supervalu Holdings, Inc.*, No. C-050156, 2005 WL 3557399, at *3 (Ohio Ct. App. Dec. 30, 2005). For this reason, plaintiffs are not consumers and there was no commercial transaction. *See Hayes v. Asset Recovery Mgmt. Grp., Ltd.*, No. 3:10CV1098, 2011 WL 3566851, at *1 (N.D. Ohio Aug. 12, 2011) ("The only 'transaction' between the plaintiff and the defendants involved their efforts to collect debts she did not owe. Such 'transactions' are outside the OCSPA."), *partially vacated to include ruling on common law claims by* 2011 WL 68177789 (N.D. Ohio Dec. 28, 2011); *Rose-Gulley*, 2004 WL 1736982, at *3 (noting that a consumer seeking relief must have engaged in a consumer transaction with a supplier, the court held that the plaintiff "ha[d] failed to present any evidence suggesting that she was engaged in a consumer transaction with [defendant] with respect to the vehicle at issue in this case"); *see also Wallace v. Sunstar Acceptance Corp.*, Nos. C-990390, C-990424, 2000 WL 569565, at *3 (Ohio Ct. App. May 12, 2000) (finding the OCSPA inapplicable to action challenging the repossession of a vehicle). Defendants' motions, to the extent they seek the dismissal of plaintiffs' OCSPA claim, are GRANTED.

### C. Civil Theft Claim

Both defendants also argue that plaintiffs' civil theft claim is fatally flawed.[6] The Court agrees. Ohio Rev. Code § 2913.43(A) provides that "[n]o person, by deception, shall cause another to execute any writing that disposes of or encumbers property, or by which a pecuniary obligation is incurred." Ohio Rev. Code § 2307.60(A)(1) provides for damages for "[a]nyone injured in person or property by criminal acts[.]" However, beyond the conclusory allegations

---

[6] The complaint also purports to raise a common law claim of conversion. (Compl. ¶¶ 52-57.) The Court makes no determination as to the viability of that claim.

10

that defendants committed "theft crimes" under Ohio Rev. Code § 2913.43, the complaint fails to allege any facts that would support a claim under this statute for civil damages. (*See* Compl. ¶ 83.) There are no allegations that either defendant caused plaintiffs to execute a writing that disposes of or encumbers their vehicle. Moreover, the complaint specifically provides that the Ford Edge was eventually returned to plaintiffs upon discovery that the vehicle was no longer owned by Willy Perry. (Compl. ¶¶ 26-27.) Defendants' motions, to the extent they seek dismissal of the civil theft claim, are GRANTED. For the same reasons, plaintiffs' request for damages resulting from defendants' alleged "theft crimes" under Ohio Rev. Code § 2307.60 is DENIED. (*See id.* ¶ 85.)

## IV. CONCLUSION

For the foregoing reasons, Westlake's motion to dismiss and ARS' motion for partial judgment on the pleadings are DENIED as to plaintiffs' FDCPA claim (Count IV) and GRANTED as to plaintiffs' OCSPA and civil theft claims (Counts I and VIII). Plaintiffs' OCSPA and civil theft claims are DISMISSED with prejudice.

**IT IS SO ORDERED**.

Dated: January 28, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**